UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNA MARIA BENSETT,

        Plaintiff,                  Case No. 2:16-cv-11772
                                              District Judge Victoria A. Roberts
v.                                           Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 18), DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 24), REVERSE THE COMMISSIONER'S DECISION, AND REMAND FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary

judgment, **DENY** Defendant's motion for summary judgment, **REVERSE** the

Commissioner's decision, and **REMAND** this case to the Commissioner and the

ALJ under Sentence Four of § 405(g) for further consideration consistent with the

report below.

**II.    REPORT**

       Plaintiff, Anna Maria Bensett, brings this action under 42 U.S.C. §§ 405(g)

and 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her application for supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 18), the Commissioner's memorandum in opposition and cross motion for summary judgment (DE 24), and the administrative record (DE 15).

## A. Background

Plaintiff filed her application for SSI on July 20, 2012, alleging that she had been disabled since December 22, 2008 as a result of carpal tunnel, diabetes, fibromyalgia, chronic migraines, chronic pain, and arthritis. (R. at 134-39 and 150.) She later amended her alleged onset date to July 20, 2012. (R. at 43 and 194.) Her application was denied and she sought a *de novo* hearing before an Administrative Law Judge ("ALJ"). ALJ Kevin Fallis held a hearing on June 4, 2014 and subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 20-73). On April 12, 2016, the Appeals Council denied Plaintiff's request for review. (R. at 1-6). ALJ Fallis's decision became the Commissioner's final decision. Plaintiff then timely commenced the instant action.

## B. Plaintiff's Medical History and Hearing Testimony

Plaintiff testified to experiencing migraine headaches a few times per week. (R. at 52.) Her medical record contains a great number of emergency room visits,

including 51 during a 22-month period, with the vast majority related to her headaches. (R. at 244-264, 265-290, 291-326, 366-382, 383-405, 406-433, 434-456, 457-478, 570-666, 667-689, 901-928, 995-1030, 1099-1125, 1126-1151, 1178-1225, 1248-1282, 1324-1363, 1441-1486, 1557-1581, 1582-1624, and 1625-1646.) There is some evidence of mental health treatment in the record as well, including a July 30, 2012 notation that her copay for psychological treatment increased from $3 to $10 and she could no longer afford it, as well as a history of anxiety and panic attacks. (R. at 843 and 1285.) There are also several notations that Plaintiff's frequent hospital visits could be caused by "hypochondria," but no official diagnosis. (R. at 1285 and 1523.)

### C. Vocational Expert Testimony

Mary Everetts testified at the hearing as a Vocational Expert ("VE"). (R. at 65-73.) The ALJ asked a series of hypothetical questions. In the first, he asked if an individual of Plaintiff's age, education, and work experience could perform her past relevant work with the following limitations:

> They are limited to sedentary work. They can never perform pushing and pulling, never operate foot controls, never climb ladders, ropes, or scaffolds, occasionally climb ramps or stairs, occasionally balance, stoop, kneel, crouch, and crawl.
>
> This individual could perform occasional overhead reaching. They would be limited to frequent handling of objects and fingering bilaterally. They would have to avoid concentrated exposure to extreme cold, extreme heat. They would have to avoid concentrated exposure to excessive noise. They would have to avoid all exposure

3

to excessive vibration, all use of hazardous moving machinery and all
exposure to unprotected heights.

(R. at 69 and 71.) The VE testified that the individual could not perform Plaintiff's past relevant work as cashier/courtesy booth worker, but could perform other jobs, including information clerk, with 85,000 positions nationally, packer, with 70,000 positions nationally, and assembler, with 40,000 positions nationally. (R. at 71.)

The ALJ then modified the hypothetical to include the restriction that the work be limited to simple, routine, repetitive tasks performed in a working environment free of fast paced production requirements, involving only simple work-related decisions and routine workplace changes. The VE testified that the previous positions would still apply, but the assembler position would be reduced by 50%. The VE further testified that if the individual missed two days of work per month or was off task 20 percent of the day, it would be work preclusive. (R. at 70.)

### D. The Administrative Decision

On September 21, 2014, the ALJ issued his decision. At **Step 1** of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 20, 2012. (R. at 22.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin*

At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: obesity, bilateral carpal tunnel syndrome, migraine headaches, fibromyalgia, osteoarthritis, rheumatoid arthritis/systemic lupus erythematosus, hypertension, iron deficient anemia, obstructive sleep apnea, decreased visual acuity, chronic kidney disease, and degenerative disc disease of the lumbar spine. (R. at 22.) Because it caused "no more than minimal functional limitations," the ALJ found Plaintiff's depression and anxiety were non-severe impairments in part because she did not seek any professional psychological or psychiatric treatment. (Id.)

At **Step 3**, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed

---

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22-23.)

Prior to undertaking Step 4 of the sequential process, the ALJ evaluated Plaintiff's RFC and determined that she had the capacity to perform sedentary work[2] with the following limitations:

> lifting up to 10 pounds occasionally; standing/walking for about 2 hours and sitting up to 6 hours in an 8-hour work day, with normal breaks; never pushing or pulling; never using foot control operation; never climbing ladders, ropes or scaffolds; occasional climbing of ramps or stairs; occasional balancing, stooping, kneeling, crouching or crawling; occasional overhead reaching; frequent bilateral handling of objects and fingering; must avoid concentrated exposure to extreme cold and heat; must avoid concentrated exposure to excessive noise; must avoid all exposure to excessive vibration; must avoid all use of hazardous moving machinery; must avoid all exposure to unprotected heights. Due to pain work is limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work related decision and routine work place changes.

(R. at 23-24.) The ALJ then concluded at **Step 4** that Plaintiff could not perform her past relevant work. (R. at 32.)

At **Step 5**, the ALJ concluded that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy. (R. at 33.) The

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §404.1567(a).

ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (Id.)

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**F. Analysis**

Plaintiff sets forth three areas in which she asserts that the ALJ committed reversible error. First, she asserts that she is entitled to an award of benefits for the closed period of 22 months, during which she averaged an emergency room visit approximately twice per month. Second, she argues that the ALJ failed to sufficiently develop the record with respect to her mental illness. Finally, she contends that the ALJ erred in his weighing of opinion evidence. The Commissioner opposes Plaintiff's motion, asserting that she is entitled to summary judgment because substantial evidence supports the ALJ's conclusions.

My analysis hinges on the ALJ's consideration of Plaintiff's hospital visits and the development of the record with respect to her mental impairments. Therefore, I will limit this Report to addressing those issues and the additional subset of issues that they present. Specifically, while I do not agree that Plaintiff is automatically entitled to a closed period of benefits for the 22-months in which she had frequent hospital visits, I conclude that the ALJ failed to properly consider the impact of her frequent hospital visits and possible mental impairments on her ability to engage in competitive employment, both within and outside of those 22 months. As I recommend that this matter be remanded to the ALJ for rehearing for the above mentioned errors, I also caution that he or she follow the dictates of the treating physician rule when weighing any opinion evidence on remand.

### 1. Remand is required for further analysis of the impact of Plaintiff's hospital visits on her ability to engage in competitive employment.

Plaintiff asserts that she is entitled to benefits for the 22-months from July 2012 through April 2014 because she was seen in the emergency room 51 times during that period. According to Plaintiff, because this averages out to two days per month that she would have been unable to work, and because the VE testified that missing two days per month would be work preclusive, then she is entitled to benefits for that period. While I disagree that this automatically entitles Plaintiff to benefits during that closed period, I conclude that the ALJ has failed to sufficiently analyze the impact of her hospital visits when assessing her RFC.

The ALJ does acknowledge Plaintiff's frequent ER visits by summarizing them briefly within his opinion. (R. at 27-31.) He concludes with the following:

> The record confirmed a long string of Emergency Room visits primarily for headaches, chest pain and shortness of breath. However, all of the physical examinations and objective tests were essentially normal. There were multiple references in the record to hypochondria.

(R. at 31.) The ALJ seemingly attributes Plaintiff's frequent emergency room visits, therefore, to hypochondria, which is defined in the DSM-5 as a somatic symptom disorder, involving "a significant focus on physical symptoms—such as pain or fatigue—to the point that it causes *major emotional distress and problems*

*functioning*" which may lead to "frequent doctor visits."[3] However, he also concludes that her mental health impairments were non-severe. (DE 22.) An impairment is "severe" where it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The result here is inconsistent: Plaintiff is not disabled because the reason for her 51 emergency room visits in less than two years was hypochondria, yet her mental conditions are non-severe impairments, despite the VE's explicit testimony that an absence from work for two days per month "would be work preclusive." (R. at 70.)

Defendant counters that emergency room visits do not correlate with an inability to work, relying on the Sixth Circuit's opinion stating the following:

> When dealing with physical symptoms, courts have held that if the underlying impairment is insufficient to be disabling to a particular claimant, claimant's hospitalization and periods of recuperation represent distinct and separate periods of disability which cannot satisfy the statutory requirement of continuous disability for twelve months or more.

*Maher v. Sec'y of Health & Hum. Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989). In that case, however, the issue was whether the claimant met the twelve-month

---

[3] Mayo Clinic, "Somatic Symptom Disorder," available at http://www.mayoclinic.org/diseases-conditions/somatic-symptom-disorder/basics/definition/con-20124065 (last visited August 2, 2017); Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, "Somatic Symptom and Related Disorders," available at http://dsm.psychiatryonline.org/doi/abs/10.1176/appi.books.9780890425596.dsm09 (last visited August 2, 2017) (emphasis added).

*durational requirement* necessary to establish disability. Here, the issue is whether the ALJ properly considered her frequent hospitalizations when assessing her *ability to engage* in competitive employment.

This district has held that the ALJ's failure to consider the effects of numerous hospitalizations on an individual's ability to work can constitute reversible error. For example, in *Hawke-Dingman v. Comm'r of Soc. Sec.*, 2012 WL 5328674 (E.D. Mich. Sept. 11, 2012) (Michelson, M.J.), the Court remanded pursuant to Sentence Six, stating the following:

> Plaintiff's sentence-six evidence might also result in a different outcome on remand for another reason: work absences. Between November 2009 and October 2010 Plaintiff was hospitalized for 44 days. She has now produced evidence that she was hospitalized for 14 days in 2011, and, so far in 2012, 11 days. It is far from plain that a person requiring hospitalization as frequently as Plaintiff—69 days in less than three years (about two days per month)—would be able to maintain substantial gainful employment.

*Id.* at *12, *report and recommendation adopted* 2012 WL 5306218 (E.D. Mich. Oct. 29, 2012) (Steeh, J.). Likewise, in *Minke v. Comm'r of Soc. Sec.*, No. CV 15-12516, 2016 WL 4253968 (E.D. Mich. July 18, 2016) (Grand, M.J.), the Court concluded that, where the "many, if not the majority, of [the claimant's] hospitalizations related to issues she was having with her diabetes, depression, and pain, all of which are impairments that the ALJ found to be severe." *Id.* at *7, *report and recommendation adopted* 2016 WL 4205992 (E.D. Mich. Aug. 10, 2016) (Murphy, J.). Similarly, here, Plaintiff's hospital visits were largely related

12

to her headaches, which the ALJ found to be a severe impairment. (R. at 244-264, 265-290, 291-326, 366-382, 383-405, 406-433, 434-456, 457-478, 570-666, 667-689, 901-928, 995-1030, 1099-1125, 1126-1151, 1178-1225, 1248-1282, 1324-1363, 1441-1486, 1557-1581, 1582-1624, and 1625-1646.) *See also id.* at \*\*6-8 (collecting cases with similar holdings).

In contrast, in at least one case, this district has found that frequent hospitalizations are not disabling. In *Bryce v. Comm'r of Soc. Sec.*, No 12-cv-14618, 2014 WL 1328277 (E.D. Mich. Mar. 28, 2014) (Goldsmith, J.), the court held that where the claimant's hospital visits were not disabling where they lasted for a limited duration and resulted in improvement, suggesting that the claimant's impairments could "be controlled with proper treatment." *Bryce v. Comm'r of Soc. Sec.*, No. 12-cv-14618, 2014 WL 1328277, at \*3 (E.D. Mich. Mar. 28, 2014). However, the *Bryce* court also concluded that the plaintiff had waived her argument related to frequent hospital visits by not raising it before the magistrate judge.

Defendant is correct that here, many of Plaintiff's hospital visits lasted less than a day. However, the instant matter is distinguishable from *Bryce* because the ALJ did not conclude that she improved in such a way that her headaches could be controlled with proper treatment. Plaintiff testified at the hearing to continuing to experience headaches twice a week. (R. at 52.) Moreover, this case has the added

13

element of Plaintiff's alleged "hypochondria." On that front, because the ALJ found her mental impairments to be non-severe at Step 2, he did not consider the impact of such an impairment on the potential for continuing frequent hospitalizations. Missing over two days of work per month for visits to the emergency department is work preclusive, regardless of whether the visit is for physical or mental reasons. (R. at 70.) Accordingly, I conclude that the ALJ failed to provide an accurate and logical bridge to permit meaningful appellate review of his application of the rules. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also Pollaccia v. Comm'r of Soc. Sec.*, No. 09-cv-14438, 2011 WL 281044, at *6 (E.D. Mich. Jan. 6, 2011) (Majzoub, M.J.) (explaining that the court "may not uphold an ALJ's decision, even if there is enough evidence to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result.").

### 2. The record should be further developed.

In light of the prior recommendation, I also recommend that the ALJ be directed to further develop the record as necessary to obtain an accurate picture of Plaintiff's level of mental impairments, including but not limited to hypochondria. *See, e.g., Sims v. Apfel*, 530 U.S. 103, 111 (2000) ("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."). Here, there is some indication in the record of Plaintiff's mental

impairments, including the ALJ's own reliance on her "hypochondria" to analyze her frequent hospital visits. While Defendant is correct that the ALJ normally does not have a duty to develop the record where Plaintiff is represented, the record here contains a note that she became unable to pay for mental health treatment along with frequent references to her depression and anxiety. (See, *e.g.*, R. at 269, 368, 408, 437, 843, 1285, and 2063.)

Notably, the ALJ did not address Plaintiff's inability to pay for treatment when concluding that she "did not seek any professional psychological or psychiatric treatment." (R. at 22.) This is in contravention of Social Security Ruling 96-7p, which provides that an ALJ may not draw:

> any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

S.S.R. 96-7P. For example, the ALJ should consider the claimant's explanation where the individual "may be unable to afford treatment and may not have access to free or low-cost medical services." *Id.* Similarly, Social Security Ruling 82-59 provides that inability to afford treatment is a justifiable cause for failing to follow prescribed treatment. S.S.R. 82-59; *see also McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990) (agreeing with the conclusion that a "condition that is disabling in fact continues to be disabling in law," when the claimant "cannot afford

prescribed treatment or medicine and can find no way to obtain it." (internal quotations omitted)). Additional analysis of her mental health condition and treatment (or lack thereof, including any indigency or insurance issues) is necessary, and opinion evidence on this issue could be extremely helpful in analyzing Plaintiff's potential mental health issues in light of her ability to work.

### 3. Remand under Sentence Four for further consideration is appropriate.

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir.1994) (citing 42 U.S.C. § 405(g)).

Under a sentence-four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Where there is insufficient support for the Commissioner's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue,* 10–207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher,* 17 F.3d at 174); *see also*

*White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 790 (6th Cir. 2009) ("If a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." (internal quotations omitted)). Here, there is insufficient support for the Commissioner's findings, and the factual issues have not been resolved. Specifically, I recommend that the ALJ be directed to re-analyze the record consistent with this report and recommendation, focusing on the impact of Plaintiff's frequent hospital visits on her ability to engage in competitive employment. The ALJ must also re-examine the severity of her alleged mental impairments, which requires further development of the record. Accordingly, I recommend that the Court remand this case for rehearing under Sentence Four.

### G. Conclusion

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, the Undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's motion for summary judgment (DE 18), **DENY** Defendant's motion for summary judgment (DE 24), **REVERSE** the Commissioner of Social Security's non-disability finding, and **REMAND** this case to the Commissioner

and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 3, 2017

s/Anthony P. Patti
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

**Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on August 3, 2017, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti